UNITED STATES of America ex rel.
David INGRAM

v.

MONTGOMERY COUNTY PRISON
BOARD et al.

Civ. A. No. 73–1063.

United States District Court,
E. D. Pennsylvania.

Jan. 22, 1974.

Albert Schlessinger, Bernstein, Schlessinger & Fox, Philadelphia, Pa., for plaintiff.

John A. Lord, Norristown, Pa., Barton L. Post, Edward J. Marcantonio, Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

JOHN MORGAN DAVIS, District Judge.

This Civil Rights action under 42 U.S.C. § 1983 was brought by a former inmate of Montgomery County Prison against the Prison Board (which has since been dismissed), the Warden, and the Prison Physician. Both the Warden and the Physician have moved for Summary Judgment in separate motions.

The plaintiff has two basic theories on which he predicates this action: (A) that plaintiff was ill and due to his illness he fell out of bed several times and was injured, but was not treated for the illness or injuries; (B) that plaintiff was ill due to drug addiction and yet the defendants refused to administer methadone detoxification to plaintiff. We will consider these two theories separately.

## I. PHYSICIAN'S MOTION FOR SUMMARY JUDGMENT.

### A. FAILURE TO GIVE PROPER MEDICAL TREATMENT.

The Civil Rights Act of 1871, 42 U.S.C. § 1983 provides as follows:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

There are two arguments the physician makes to avoid the operation of this Statute: (1) We are not dealing with the deprivation of any Federal right, privilege, or immunity, as required by the Statute, but only with a case of alleged medical malpractice, (2) the Statute applies only to prison officials, not to prison doctors.

### 1. DEPRIVATION OF FEDERAL RIGHT.

The mere claim of lack of proper medical attention, in and of itself, does not come within the above Civil Rights Statute. Gittlemacker v. Prasse, 428 F.2d 1 (3rd Cir. 1970); Fear v. Commonwealth of Pennsylvania, 413 F.2d 88 (3rd Cir. 1969), cert. denied 396 U.S. 935, 90 S.Ct. 278, 24 L.Ed.2d 234; Stiltner v. Rhay, 371 F.2d 420 (9th Cir. 1967), cert. denied 386 U.S. 1025, 87 S.Ct. 1384, 18 L.Ed.2d 466; Commonwealth ex rel. Gatewood v. Hendrick, 368 F.2d 179 (3rd Cir. 1966), cert. denied 386 U.S. 925, 87 S.Ct. 899, 17 L.Ed.2d 797 (1967). The ailment or injury alleged must be treatable and sufficiently severe that medical treatment is needed to prevent undue suffering or permanent residual injury. Refusal to provide treatment in such circumstances can amount to cruel and unusual punishment in violation of the Eighth Amendment. Gittlemacker, supra 428 F.2d at p. 6; Stiltner, supra 371 F.2d at p. 421, n. 5; Hughes v. Noble, 295 F.2d 495 (5th Cir. 1961); Coleman v. Johnston, 247 F.2d 273 (7th Cir. 1957); McCollum v. Mayfield, 130 F.Supp. 112 (M.D.Cal. 1955); Gordon v. Garrson, 77 F.Supp.

477 (E.D.Ill.1948); Chester J. Antieau, Federal Civil Rights Acts: Civil Practice, 859.

As explained in *Gittlemacker, supra* 428 F.2d at p. 6:

> [A]llegations of improper medical treatment by prison officials did not assert "a denial of rights secured by the federal Constitution of laws." . . . . [and] an allegation of negligent conduct by a state public official is not sufficient, in and of itself, to bring a claim within section 1983. More is needed than a naked averment that a tort was committed under the color of state law; the wrongdoing must amount to a deprivation of a right, privilege, or immunity secured by the Constitution and the laws of the United States
>
> . . . .

It is only where an inmate's complaint of improper or inadequate medical treatment depicts conduct so cruel or unusual as to approach a violation of the Eighth Amendment's prohibition of such punishment that a colorable constitutional claim is presented.

In the present case the record is insufficient to conclude that there is "no genuine issue of fact" as to whether or not the injuries are severe enough to amount to cruel or unusual punishment, and thereby give rise to a cause of action under 42 U.S.C. § 1983. Therefore summary judgment on this issue must be denied at this time.

## 2. APPLICATION TO PRISON DOCTORS.

██ Defendant physician contends that 42 U.S.C. § 1983 applies only to prison officials, not to prison doctors. He claims that in those instances in which an allegation of improper medical treatment has been allowed to proceed as a Civil Rights action, the allegations were directed *toward* Prison *Officials* for denial of *access* to medical treatment, rather than against prison *doctors* for mistreatment. However, the Statute clearly states "Every person" and not

"Every Official." Whether someone is an official or not is irrelevant; the only issue is whether or not such person acts under color of state law and deprives another of a Federal right. A private individual who joins with State Officials to violate protected rights may be held responsible under the Civil Rights Act. *Adickes v. S. H. Kress Co.*, 398 U.S. 144, 150–152, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). In the present case, there are allegations (however inartfully made by the former inmate in his pro se petition) that Doctor Andrews joined with the Warden (a State Official) to violate protected rights.

The physician points out that in all the cases where a Civil Rights action was sustained, the prisoner was denied medical treatment by a Sheriff, Warden, or other prison official; and in all the cases where a civil rights action was dismissed the allegations of lack of proper medical treatment pertained to the prison physician. However, this factor is coincidental, and not the reason for deciding the cases. The truly distinguishing factor, as stated, is whether or not the lack of proper medical attention amounts to cruel and unusual punishment. See cases cited in Antieau, *supra*.

We must bear in mind that Andrews was the prison physician. Thus we do not have a case like *Lansdown v. Worthey*, 458 F.2d 485 (8th Cir. 1972), in which a directed verdict was granted in favor of defendant Doctor Worthey because he never held an appointment as county physician and was not required to make (and did not make) periodic calls at the jail. Nor do we have a situation as in *Eaton v. Ciccone*, 283 F.Supp. 75 (W.D.Mo.1966); and *Faught v. Ciccone*, 283 F.Supp. 76 (W.D.Mo. 1966). In these two cases the court held that medical decisions as to what treatment an inmate should receive will not be questioned by the court. In these two cases a particular course of treatment was questioned, by plaintiff, and therefore the issue was *malfeasance*. This is more properly a State Court is-

sue to be raised in a malpractice suit. In the case before us, the claim is for failure to give proper medical treatment, and therefore the issue is *nonfeasance*. This can be the subject of a Federal proceeding if, as stated, it amounts to cruel and unusual punishment, carried out under color of State Law.

For these reasons, summary judgment in favor of defendant physician on the issue of failure to give proper medical treatment must be denied.

### B. FAILURE TO ADMINISTER METHADONE DETOXIFICATION.

As another basis for this Civil Rights action, plaintiff claims that Doctor Andrews failed to administer a methadone detoxification program to plaintiff, whose illness is alleged to have been caused by his drug addiction.

 There was much discussion by the attorneys of 71 P.S. § 1690.106, subd. a of the Pennsylvania Drug and Alcohol Abuse and Control Act. Whatever rights are created by this *State* statute are not relevant to the present case, since only *Federal* rights are protected by the Civil Rights Act. There is no Federal right to receive methadone treatment, but whether the failure to administer methadone treatment constitutes cruel or unusual punishment can not now be decided on the record before us. Therefore summary judgment as to this issue must also be denied.

### II. WARDEN'S MOTION FOR SUMMARY JUDGMENT.

### A. FAILURE TO GIVE PROPER MEDICAL TREATMENT.

██ Concerning plaintiff's first theory of action, that he was not treated for his illness or injuries, the warden raises the same arguments as did the physician in his motion for summary judgment. These have already been discussed in Part I–A of this Memorandum. All of the cases cited by the Warden can be distinguished from the present case either (1) because the claim did not amount to cruel or unusual punishment, or (2) because the claim was for malfeasance and not nonfeasance.

### B. FAILURE TO ADMINISTER METHADONE DETOXIFICATION.

Concerning plaintiff's second theory of action, that the defendants refused to administer methadone detoxification, the warden again raises many of the same arguments as did the physician in his motion for summary judgment. These have already been discussed in Part I–B of this Memorandum.

In the case of Coppinger v. Townsend, 398 F.2d 392 (10th Cir. 1968), cited by the warden, we are again confronted with the difference between malfeasance and nonfeasance. The Court held at page 394:

> A claim of total denial of medical care differs from a claim of inadequacy of medical care. We need not decide whether denial of medical care to prisoners in reasonable need thereof is sufficient to sustain a claim under § 1983 because in the instant case the allegations of the complaint show that medical care has been furnished. The allegation that the needed medication has been "cancelled" shows that a difference of opinion exists between the lay wishes of the patient and the professional diagnosis of the doctor. The prisoner's right is to medical care —not to the type or scope of medical care which he personally desires. A difference of opinion between a physician and a patient does not give rise to a constitutional right or sustain a claim under § 1983.

In the present case, it is not clear whether failure to give methadone amounts to denial of medical care or inadequacy of medical care. If the plaintiff was simply ignored, and no consideration was given to his condition, then there was denial of medical care. If, however, the defendants considered his

case and decided that the best treatment was no medication, then there *was* medical care, and its adequacy can not be considered by this court. This presents a genuine issue of fact which must be decided at a hearing.

In the *Coppinger* case, the court also held that inasmuch as a Prison Warden was without authority to send the plaintiff prisoner to a State hospital for treatment of neurodermatitis, the Warden could not be liable under the Civil Rights Act for failing to do so. In the case before this court, the warden similarly alleged that he had no detoxification facilities in prison and has no authority to supply a prisoner with drugs, i. e., methadone, or send a prisoner to outside facilities. However, these are matters of defense and not matters to be considered on a motion for summary judgment. None of the parties has been deposed as yet, and there is no support anywhere in the record for defendant's allegations that he had no detoxification facilities in the Prison and had no authority to supply the prisoner with methadone or to send the prisoner to outside facilities for the administration of methadone.

Although defendant's counsel stated in his letter to the Court, dated January 11, 1974, that he would take an affidavit from the warden, this would not resolve all the issues of fact in this case, nor would it be subject to the searching light of cross-examination. Furthermore, the defense that the warden had no detoxification facilities available assumes one of the issues in question, which is whether such failure to have detoxification facilities available in and of itself constitutes a violation of the Plaintiff's civil rights.

Plaintiff contends that the deprivation of methadone detoxification treatment to a known addict is prima facie evidence of cruel and unusual punishment as the physical effects and pain accompanying its deprivation are matters of "common knowledge." Here it is plaintiff's turn to assume facts not in evidence. Expert medical testimony will be required to determine the effects of giving or withholding methadone treatment. For these reasons, summary judgment will be denied.