Charles R. **DERRICKSON**, Plaintiff,

v.

Paul **KEVE**, in his capacity as Director, Division of Adult Corrections, State of Delaware, et al., Defendants.

Civ. A. No. 74–110.

United States District Court, D. Delaware.

March 7, 1975.

Richard D. Albright, Community Legal Aid Society, Inc., Wilmington, Del., for plaintiff.

Francis A. Reardon, Deputy Atty. Gen., of Delaware, for defendants.

## OPINION

LAYTON, District Judge:

At issue in this case is the extent of the State's obligation to furnish medical care to one of its prisoners.

Charles Derrickson is serving a life sentence in the Delaware Correctional Center at Smyrna. On August 1, 1973, a hospital radiologist examined Plaintiff and concluded that he suffered from "right maxillary sinusitis." An otolaryngologist concluded that he also suffered from a deviated nasal septum and sinus headaches.

On May 20, 1974, Defendant Dr. Nuezzo (the attending physician at Delaware Correctional Center) examined Plaintiff and found "time to time congestion" and "headaches to the left side of the head." On June 3, 1974, another physician diagnosed Plaintiff's condition as "diseased tonsils" and a "deviated nasal septum," and recommended that a tonsillectomy and "submucus resection of the nasal septum" be performed. On June 7, Dr. Nuezzo also suggested that these two operations be performed, and wrote that "(t)he operation will be done as soon as possible."

On June 4, 1974, Plaintiff filed this civil rights petition, pursuant to 42 U.S. C. § 1983. At the Court's invitation,

Community Legal Aid Society, Inc., of Wilmington, undertook to represent Plaintiff, and filed an amended complaint based upon the same statutory provision, alleging that Defendants have denied Plaintiff medical relief, and thereby have subjected him to cruel and unusual punishment and invidious discrimination, in violation of the Eighth and Fourteenth Amendments.[1] The only relief prayed for was performance of the recommended operations.

The parties have each moved for summary judgment and filed supporting affidavits. Therein, Plaintiff states that he "experiences continuously a dull throbbing ache on the left side of his head," that he has "severe repeated headaches which occur several times a week and which are only temporarily relieved by aspirin and other medication;" he "experiences constant congestion on the left side of his head" which is not relieved by medication, and, therefore, he must breathe through his mouth, so has a constantly sore throat. By his attorney, Plaintiff concedes that the indicated operation is of elective, rather than emergency nature.

Defendants concede that Dr. Nuezzo did, in a written report, state that "the operations will be done as soon as possible."[2] However, an affidavit by the otolaryngologist previously referred to, who has examined Plaintiff twice, states that "(t)here are many patients with similar conditions who have had [such] surgery recommended but who have decided against having an operation and are still capable of enjoying normal, productive lives with minimal discomfort. . . . (W)hile the surgery is indicated it is not urgent." Another physician, who has reviewed Plaintiff's records and consulted with the doctor quoted above, states that Plaintiff's case "does not present a medical emergency nor is it even necessary at the present."

Thus, there appear to be no medical facts in controversy. Plaintiff suffers from a condition which many people elect to have treated with surgery. Although some people have chosen not to have such conditions operated upon, Plaintiff's symptoms would cause him, were the matter in his hands, to elect surgery. He does not need emergency attention.

The facts concerning failure so far to perform the operation are not clear. Defendants deny that they have "refused the plaintiff's relief," but they have not stated when the operations will be performed, or even that surgery will, in fact, be performed.

■ In this Circuit, it is well established that

"(i)t is only where an inmate's complaint of improper or inadequate medical treatment depicts conduct so cruel or unusual as to approach a violation of the Eighth Amendment's prohibition of such punishment that a colorable constitutional claim is presented."

Gittlemacker v. Prasse, 428 F.2d 1, 6 (3 Cir. 1970). *See* Fear v. Commonwealth, 413 F.2d 88 (3 Cir. 1969), cert. den. 396 U.S. 935, 90 S.Ct. 278, 24 L.Ed.2d 234; Commonwealth ex rel. Gatewood v. Hendrick, 368 F.2d 179 (3 Cir. 1966), cert. den. sub nom. Gatewood v. Hendrick, 386 U.S. 925, 87 S.Ct. 899, 17 L.Ed.2d 797; and United States ex rel. Ingram v. Montgomery County Prison Board, 369 F.Supp. 873 (E.D.Pa.1974). Although even negligent denial of medical treatment is not by itself a constitutional deprivation, *see* Kontos v. Prasse, 444 F.2d 166 (3 Cir. 1971), there are medi-

---

1. Plaintiff has not pursued the invidious discrimination argument. The Court thanks Mr. Albright of C.L.A. for the excellent *pro bono* assistance he has rendered.

2. It does not appear, however, that Dr. Nuezzo has any decision-making authority as to whether or not surgery will be performed. *See* Regulation 21(2), Inmate Reference Manual, Appendix A.

cal acts of omission and commission which have been held to be of constitutional import. *See*, e. g., Dewell v. Lawson, 489 F.2d 877 (10 Cir. 1974); Corby v. Conboy, 457 F.2d 251 (2 Cir. 1972); Sawyer v. Sigler, 445 F.2d 818 (8 Cir. 1971); Martinez v. Mancusi, 443 F.2d 921 (2 Cir. 1970); Hirons v. Director, Patuxent Institution, 351 F.2d 613 (4 Cir. 1965); Coleman v. Johnston, 247 F.2d 273 (7 Cir. 1957); Green v. Cauthen, 379 F.Supp. 361 (D.S.C.1974); and United States ex rel. Ingram v. Montgomery County Prison Board, *supra.*

In the instant case, failure to provide Plaintiff with treatment is made significant by one overwhelming fact: Plaintiff is serving a life sentence. This is not a case in which a prisoner seeks redress for an isolated instance of past negligence, or one in which he seeks treatment which he might elect to have performed when he is released from incarceration. So far as this Court can determine, a decision not to afford Plaintiff an operation would mean that Plaintiff's condition would be made irreparable. The surgery, then, is not elective. Unless Defendants act, it is impossible.

 In these circumstances, it would seem that a decision by prison officials *never* to allow Plaintiff to elect surgery which the prison's own physician has recommended would indeed by arbitrary, capricious, and cruel. On the other hand, the law is clear that in failing to provide surgery *to date,* the authorities have not exceeded their discretion. Kontos v. Prasse, *supra.* Unfortunately, Defendants have been so Delphic as to their plans that, on the basis of the current record, the Court does not know

what, if any, decision they have made about Plaintiff's condition. Thus, the present record would support summary judgment for neither side.

Plaintiff also alleges that in failing to schedule surgery, Defendants have violated State Law.[3] 11 Del.C.Ann. § 6536 (1970) states:

"The Department [of Corrections] shall promulgate reasonable standards, for and shall establish reasonable health, medical and dental services, for each institution, including preventive, diagnostic and therapeutic measures on both an out-patient and hospital basis for all types of patients."

This Section has been implemented by regulations published in the Inmate Reference Manual.

Again, the record precludes a summary determination. Without knowing what the Department's officers have decided to do, the Court cannot determine whether or not the services afforded Plaintiff are "reasonable" within the meaning of the statute.

Therefore, neither motion for summary judgment will be granted at this time. However, should the parties within 20 days of receipt of this Opinion submit information 1) concerning the Court's assumption that there are no present plans for Plaintiff to be placed on parole, and 2) clarifying Defendants' present plans for treatment of Plaintiff's condition, the Court will again consider the motions. Otherwise, the case will be set for trial.

3. *See* Jenkins v. Keve, Civ.A. No. 74–101 (D.Del. 9–20–74) and Davidson v. Keve, Civ.A. No. 74–128 (D.Del. 9–24–74).